UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DUNKIN' DONUTS FRANCHISED RESTAURANTS LLC, a Delaware Limited Liability Company, DUNKIN' DONUTS FRANCHISING LLC, a Delaware Limited Liability Company, DD IP HOLDER LLC, a Delaware Limited Liability Company, <br><br> Plaintiffs, <br><br> v. <br><br> KENMORE SQUARE FOODS LLC, a Massachusets Limited Liability Company, HIGHLAND AVENUE RESTAURANT CORP., a Massachusets Corporation, DANZACH FOODS CORP., a Massachusets Corporation POWDER HOUSE FOODS LLC, a Massachusets Limited Liability Company, HOUMAN BAIANY, a resident of the Commonwealth of Massachusetts, and HEATHER BAIANY, a resident of the Commonwealth of Massachusetts, <br><br> Defendants. | Case No. _____ |

## COMPLAINT

This is an action for breach of contract, trademark and trade dress infringement, and unfair competition arising from the operation of Dunkin' Donuts franchises by Defendants. Defendants have breached their Franchise Agreements with Plaintiffs by committing identity fraud under Massachusetts law and attempted larceny under Massachusetts law, and, upon information and belief, by committing federal mail fraud and federal identity fraud. Plaintiffs

terminated the Franchise Agreements based on Defendants' conduct. Plaintiffs seek monetary, injunctive, and other relief for the reasons set forth below.

## PARTIES

1.  Plaintiff Dunkin' Donuts Franchised Restaurants LLC, successor-in-interest to Dunkin' Donuts Incorporated, is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. All Dunkin' Donuts Franchise Agreements dated prior to May 26, 2006 have been assigned to Dunkin' Donuts Franchised Restaurants LLC. It is engaged in the business of franchising independent businesspersons to operate Dunkin' Donuts shops throughout the United States. Dunkin' Donuts franchisees are licensed to use the trade names, service marks, and trademarks of Dunkin' Donuts and to operate under the Dunkin' Donuts system, which involves the production, merchandising, and sale of donuts and related products utilizing a specially designed building with special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks and identification.

2.  Plaintiff Dunkin' Donuts Franchising LLC is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. All Dunkin' Donuts Franchise Agreements dated on or after May 26, 2006 are in the name of Dunkin' Donuts Franchising LLC. It is engaged in the business of franchising independent businesspersons to operate Dunkin' Donuts shops throughout the United States. Dunkin' Donuts franchisees are licensed to use the trade names, service marks, and trademarks of Dunkin' Donuts and to operate under the Dunkin' Donuts system, which involves the production, merchandising, and sale of donuts and related products utilizing a specially designed building with special equipment, equipment layouts, interior and exterior accessories, identification

schemes, products, management programs, standards, specifications, proprietary marks, and identification.

3. Plaintiff DD IP Holder LLC, successor-in-interest to Dunkin' Donuts USA, Inc., is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. DD IP Holder LLC is the owner of the trademark, service mark, and trade name "Dunkin' Donuts," and related marks. Unless otherwise specified, Dunkin' Donuts Franchised Restaurants LLC, Dunkin' Donuts Franchising LLC and DD IP Holder LLC are collectively referred to hereinafter as "Dunkin'" or "Dunkin' Donuts."

4. Defendant Kenmore Square Foods LLC is a Massachusetts limited liability company with its principal place of business at 530 Commonwealth Ave., Boston, MA 02215. Kenmore Square Foods LLC was the owner and operator of a retail Dunkin' Donuts shop located at 530 Commonwealth Ave., Boston, MA 02215, pursuant to a Franchise Agreement dated May 20, 2004.

5. Defendant Danzach Foods Corp. is a Massachusetts corporation with its principal place of business at 1020 Commonwealth Ave., Boston, MA 02215. Danzach Foods Corp. was the owner and operator of a retail Dunkin' Donuts shop located at 1020 Commonwealth Ave., Boston, MA 02215, pursuant to a Franchise Agreement dated October 29, 2001.

6. Defendant Highland Ave. Restaurant Corp. is a Massachusetts corporation with its principal place of business at 154 Highland Ave., Somerville, MA 02143. Highland Ave. Restaurant Corp. was the owner and operator of a retail Dunkin' Donuts shop located at 154 Highland Ave., Somerville, MA 02143, pursuant to a Franchise Agreement dated July 9, 2003.

7.	Defendant Powder House Foods LLC is a Massachusetts limited liability company with its principal place of business at 850 Broadway, Somerville, MA 02144. Powder House Foods LLC was the owner and operator of a retail Dunkin' Donuts shop located at 850 Broadway, Somerville, MA 02144, pursuant to a Franchise Agreement dated February 9, 2009.

8.	Defendant Houman Baiany is a natural person and, upon information and belief, is a citizen and resident of the Commonwealth of Massachusetts. Houman Baiany is a shareholder or member of each of the foregoing corporate defendants and personally guaranteed the obligations of those entities pursuant to executed personal guarantees.

9.	Defendant Heather Baiany is a natural person and, upon information and belief, is a citizen and resident of the Commonwealth of Massachusetts. Heather Baiany is a shareholder of Danzach Foods Corp. and personally guaranteed the obligations of that entity pursuant to an executed personal guarantee.

## JURISDICTION AND VENUE

10.	This Court has jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116(a) & 1121, and 28 U.S.C. §§ 1331, 1338, & 1367(a).

11.	This Court has *in personam* jurisdiction over Defendants because they conduct business in this district, they are residents of this district, and the events giving rise to Plaintiffs' claims occurred in this district.

12.	Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## BACKGROUND FACTS

### The Dunkin' Donuts System

13.	Dunkin' Donuts is the franchisor of the Dunkin' Donuts franchise system.

14.	DD IP Holder LLC is the owner of the trademark, service mark, and trade

name "Dunkin' Donuts," and related marks. Dunkin' Donuts Franchising LLC has a license to use and license others to use these marks and trade name and, along with its predecessors, has used them continuously since approximately 1960 to identify its doughnut shops, and the doughnuts, pastries, coffee, and other products associated with those shops.

15. The Dunkin' Donuts trademarks and trade name are distinctive and famous and have acquired secondary meaning.

16. The Dunkin' Donuts trademarks and trade name are utilized in interstate commerce.

17. The Dunkin' Donuts marks have been very widely advertised and promoted by Dunkin' Donuts over the years. Between 1971 and 2007, Dunkin' and its franchisees spent over $1,925,000,000 on advertising and promoting the Dunkin' Donuts marks. Dunkin' Donuts spent approximately $190 million in fiscal year 2007 alone on advertising and promotion.

18. Dunkin' Donuts and its franchisees currently operate over 6,000 shops in the United States and 2,500 shops outside of the United States. Dunkin' Donuts shops feature Dunkin' Donuts' distinctive trade dress, including the pink and orange color scheme, and the frankfurter lettering style. In the more than forty-eight years since the Dunkin' Donuts system began, millions of consumers have been served in Dunkin' Donuts shops.

19. As a result of the extensive sales, advertising, and promotion of items identified by the Dunkin' Donuts marks, the public has come to know and recognize the Dunkin' Donuts marks, and to associate them exclusively with products and services offered by Dunkin' Donuts and its franchisees. The Dunkin' Donuts marks are among the best and most widely known trademarks in the United States today, and are assets of inestimable value to Dunkin' Donuts, representing and embodying Dunkin' Donuts' considerable goodwill and favorable

reputation.

### The Parties' Rights and Obligations Under the Franchise Agreements

20. Defendants were licensed to use Dunkin' Donuts' trademarks, trade name, and trade dress in accordance with the terms of their Franchise Agreements.

21. Under the Kenmore Square Foods LLC, Danzach Foods Corp., and Highland Ave. Restaurant Corp. Franchise Agreements, Defendants agreed to use the Dunkin' Donuts proprietary marks, including, but not limited to, its trademarks, logos, emblems, trade dress and other indicia of origin, "only in the manner and to the extent specifically licensed" by the agreements. (Franchise Agreements §§ 7.0 and 7.1.)

22. Defendants agreed they would not do or perform, directly or indirectly, any act injurious or prejudicial to the goodwill associated with Dunkin' Donuts' proprietary marks and the Dunkin' Donuts system. (Franchise Agreements § 8.0.1.)

23. Defendants agreed that they would comply with all applicable laws, rules, regulations, ordinances, and orders of public authorities. (Franchise Agreements § 5.1.7.)

24. Defendants agreed that they would not use the franchises for any illegal or unauthorized purpose. (Franchise Agreements § 9.0.3.)

25. Defendants agreed that it would be a default under the Franchise Agreements if they committed a felony or crime involving moral turpitude, or any other crime or offense that Dunkin' Donuts believes is injurious to the Dunkin' Donuts system, proprietary marks or the goodwill associated therewith, or if Dunkin' Donuts has proof that Defendants committed such felony, crime or offense. (Franchise Agreements § 9.0.2.)

26. Under Section 9.1.4 of the Franchise Agreements, no cure period is available if Defendants are in default under any paragraph designated 9.0.1 through 9.0.4 or if they

otherwise commit an act of fraud with respect to their obligations under the Agreements. Moreover, as a matter of law, no cure period is available for such defaults.

28. Defendants agreed that, upon the termination of the Franchise Agreements, their right to use the Dunkin' Donuts proprietary marks and system would cease, and they would promptly pay Dunkin' Donuts any damages, costs, and expenses, including reasonable attorneys' fees, incurred by Dunkin' Donuts as a result of the Defendants' default(s). (Franchise Agreements §§ 9.3, 9.4, 9.4.1 and 9.4.2.)

28. Defendants agreed that any unauthorized use of the Dunkin' Donuts proprietary marks during or after the expiration or termination of the Franchise Agreements would constitute an incurable default causing irreparable harm subject to injunctive relief. (Franchise Agreements §§ 7.1, 9.4.2 and 9.4.3.)

29. Under the Powder House Franchise Agreement, Defendants agreed no cure period is available if the franchisee or its owners: commit a felony or crime involving moral turpitude or any other crime or offense that is injurious to the Franchisor's system or goodwill, regardless of prosecution or conviction; commit a fraud upon Franchisor or a third party relating to a franchised business; or permit the use of any franchised business for an unauthorized purpose. (Franchise Agreement §§ 14.0.3, 14.0.4, 14.0.5 and 14.2.)

30. Further, pursuant to Paragraphs 14.0.6 and 14.2 of the Powder House Foods LLC Franchise Agreement, the termination of any other Franchise Agreement with any affiliated entity by reason of a default under sections 14.0.3, 14.0.4, or 14.0.5 constitutes a noncurable default and good cause for termination of the Powder House Foods LLC Franchise Agreement. Additionally, pursuant to Paragraph 14.4.4 of that Agreement, Defendants agreed to pay Dunkin' Donuts all costs and expenses, including reasonable payroll and travel expenses for its

7

employees, and reasonable investigation and attorneys' fees, incurred by Dunkin' Donuts in enforcing any provisions of the Agreement; and pursuant to Paragraph 14.7 and its subparts, Defendants agreed to abide by all post-termination obligations contained in the Agreement, including but not limited to obligations that are the same as those described above in paragraphs 27 and 28 of this Complaint.

## DEFENDANTS' DEFAULTS

31. Defendants participated in a scheme to defraud Dunkin' by making a fraudulent requisition for reimbursement of monies allegedly spent on a charitable donation.

32. Specifically, on November 2, 2010, Dunkin's Accounts Payable Department received a Marketing Development Fund ("MDF") Requisition Form from Defendant Kenmore Square Foods LLC claiming reimbursement of $7,498.46 for charitable contributions to the Belmont Hill School. Upon information and belief, Defendants transmitted the MDF Form to Plaintiffs through the U.S. mail.

33. The MDF is a part of Dunkin's national advertising fund, which is operated and administered by Dunkin'. The monies in the MDF are used to promote the Dunkin' brand and local shop goodwill by enabling franchisees to invest money in their local communities. Each Dunkin' franchise in the Boston market is allocated $2,000 per year to use for MDF purposes. If a franchisee owns multiple Dunkin' shops, the franchisee can request that the MDF allocations for each individual shop be linked together, thereby creating a single source of money from which the franchisee may request reimbursement for charitable spending, pursuant to MDF guidelines. MDF guidelines require the submission of documentation with the requisition for reimbursement, such as copies of the canceled check and a letter of thanks/appreciation from the sponsored organization.

34. The November 2, 2010 MDF requisition by Kenmore Square Foods LLC listed two linked Dunkin' shops: Defendants Danzach Foods Corp. and Highland Ave. Restaurant Corp.

35. Copies of two checks drawn on the account of Kenmore Square Foods LLC and made payable to the Belmont Hill School were submitted in support of the November 2, 2010 MDF requisition. One check was for the amount of $3,450.00 and the other check was for the amount of $4,048.46.

36. Also submitted with the MDF requisition was a letter allegedly signed by Richard L. Melvoin, the Belmont Hill School's Head of School, thanking Defendants Houman and Heather Baiany for their contribution to the school's 2010-2011 Annual Fund.

37. Upon receipt of the MDF requisition form, Dunkin's Accounts Payable Department took note of the unusual amounts of the checks and of grammatical and typographical errors in the letter purportedly signed by Belmont Hill School's headmaster.

38. Dunkin' contacted the Belmont Hill School and sent the letter and checks to the school for authentication.

39. The Belmont Hill School's CFO and Director of Operations represented to Dunkin' that the school's headmaster, Richard L. Melvoin, did not draft or send the letter, and that in fact the two checks were received by the school and applied to the student account of Zachary Baiany, son of Defendants Houman and Heather Baiany, for tuition and bookstore charges. Upon learning of the true nature of the checks, Dunkin' did not reimburse Kenmore Square LLC or the linked shops for the payments to the Belmont Hill School.

40. Defendants fraudulently misrepresented to Dunkin' the nature and purpose of their MDF requisition for reimbursement by submitting a false MDF Requisition Form.

41. By engaging in this fraudulent scheme that, upon information and belief, included use of the U.S. mail, Defendants violated applicable federal law, including but not limited to 18 U.S.C. § 1341.

42. Further, in violation of 18 U.S.C. §1028, Defendants knowingly used, without lawful authority, the name and signature of Richard L. Melvoin on a letter that was not written by Mr. Melvoin in connection with their scheme to defraud Dunkin' by submitting through the U.S. mail a false MDF Requisition Form.

43. In violation of Mass. Gen. Laws Ch. 266, § 37E, in conjunction with their scheme to defraud Dunkin', Defendants used the name and signature of Richard L. Melvoin, without his express authorization, on a letter that was not written by Mr. Melvoin in an attempt to obtain monies from the MDF.

44. In violation of Mass. Gen. Laws Ch. 266, § 37 and Ch. 274, § 6, Defendants, with the intent to defraud, attempted to obtain by false pretenses the reimbursement of monies from the MDF.

45. Based on the foregoing, and pursuant to the applicable provisions of the Franchise Agreements, on December 9, 2010, Plaintiffs sent to Defendants a Notice of Default and Termination, terminating the Franchise Agreements immediately upon Defendants' receipt of the Notice, stating the grounds for termination, and demanding that Defendants immediately comply with their post-termination obligations as set forth in the Franchise Agreements.

46. To date, Defendants are continuing to operate the franchised businesses under the Dunkin' Donuts trademarks.

## COUNT I
### (Breach of Contract—Franchise Agreements)

47. The allegations of paragraphs 1 through 46 are hereby incorporated by

reference.

48.     At a date unknown, Defendants entered into a scheme to defraud Dunkin' Donuts.

49.     It was part of the scheme to misrepresent and conceal the use of the funds that were being requested for reimbursement from the MDF.

50.     In furtherance of the scheme, Defendants:

    (a)     misrepresented and concealed the use of the funds requested from the MDF; and

    (b)     prepared and transmitted, upon information and belief, through the mails, a fraudulent requisition form and supporting documentation to Dunkin' Donuts.

51.     The scheme to defraud entailed the active misrepresentation of material facts and was devised and executed with the specific intent to defraud Dunkin' Donuts of money contained in the MDF.

52.     Upon information and belief, the conduct described above constitutes federal mail fraud, in violation of 18 U.S.C. § 1341, that cannot be "cured" as a matter of law, and is good cause for terminating Defendants' Franchise Agreements.

53.     This conduct also constitutes an attempt to commit larceny in violation of Mass. Gen. Laws Ch. 266, § 37 and Ch. 274, § 6, which cannot be "cured" as a matter of law, and is good cause for terminating Defendants' Franchise Agreements.

54.     Defendants also fraudulently used Richard L. Melvoin's signature, without his express authorization and without lawful authority, on a letter that was not written by Mr. Melvoin. Defendants submitted this letter to Plaintiffs as documentation in support of their

fraudulent MDF Requisition Form, in an attempt to obtain monies from the MDF.

55. Upon information and belief, this conduct constitutes identity fraud in violation of 18 U.S.C. §1028, and it also constitutes identity fraud in violation of Mass. Gen. Laws Ch 266, § 37E, for which no cure period is available as a matter of law, and is good cause for terminating Defendants' Franchise Agreements.

56. The conduct described herein constitutes breaches of the contractual obligations contained in Defendants' Franchise Agreements, described above, and constitutes grounds for terminating the Franchise Agreements.

57. As a result of Defendants' actions, Dunkin' Donuts has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

### COUNT II
### (Trademark Infringement)

58. The allegations of paragraphs 1 through 57 are hereby incorporated by reference.

59. The use in commerce of Dunkin' Donuts' trademarks and trade names by Defendants outside the scope of the Franchise Agreements and without Dunkin' Donuts' consent is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by Dunkin' Donuts. Such unauthorized use of Dunkin' Donuts' trademarks and trade names infringes on Dunkin' Donuts' exclusive rights in its trademarks under § 32 of the Lanham Act, 15 U.S.C. § 1114, and applicable state law.

60. The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

61.     As a result of Defendants' actions, Dunkin' Donuts has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

### COUNT III
### (Unfair Competition)

62.     The allegations of paragraphs 1 through 61 are hereby incorporated by reference.

63.     The use in commerce of Dunkin' Donuts' trademarks and trade names by Defendants outside the scope of the Franchise Agreements and without the consent of Dunkin' Donuts is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their goods, services, or commercial activities by another person. Such unauthorized use of Dunkin' Donuts' trademarks and trade names violates § 43 of the Lanham Act, 15 U.S.C. § 1125(a), and applicable state law.

64.     The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

65.     As a result of Defendants' actions, Dunkin' Donuts has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

### COUNT IV
### (Trade Dress Infringement)

66.     The allegations of paragraphs 1 through 65 are hereby incorporated by reference.

67.     Defendants' shops are identified by signs, exterior appearance, packaging, containers, and other items on which the words "Dunkin' Donuts" appear in the same lettering

style and in the same distinctive color scheme as Dunkin' Donuts use for the doughnut shops operated by Dunkin' Donuts licensees.

68. The use by Defendants of trade dress that is identical to the Dunkin' Donuts trade dress outside the scope of the Franchise Agreements constitutes a false designation of the origin of Defendants' shops, which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of their shops with the Dunkin' Donuts shops operated by Dunkin' Donuts licensees. Such adoption of Dunkin' Donuts' trade dress violates § 43 of the Lanham Act, 15 U.S.C. § 1125, and the common law.

69. The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

70. As a result of Defendants' actions, Dunkin' Donuts has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## Prayer for Relief

WHEREFORE, Plaintiffs pray that this Court:

a. Enter a declaratory judgment order stating that the conduct of Defendants violated the terms of the Franchise Agreements and constitutes good cause for terminating the Franchise Agreements;

b. Enter a judgment in favor of Dunkin' Donuts for the damages incurred by it as a result of Defendants' breaches of the Franchise Agreements;

c. Enter an injunctive order ratifying and enforcing the termination of the Franchise Agreements as of the effective date of the Notice of Termination, or as otherwise provided by applicable law;

  d. Enjoin Defendants and all those acting in concert with them from infringing upon Dunkin's Donuts trademarks, trade dress, and trade names and from otherwise engaging in unfair competition with Dunkin' Donuts;

  e. Enter an injunctive order directing Defendants to comply with their post-termination obligations under any contract with Dunkin' Donuts, including but not limited to, the Franchise Agreements, and taking all steps required to transfer their leasehold interests in the shops to Dunkin' Donuts or its designee, in the event that Dunkin' Donuts elects to exercise any rights it or any of its affiliates or subsidiaries might have in such interests;

  f. Award Dunkin' Donuts judgment against Defendants for the damages it has sustained and the profits Defendants have derived as a result of their actions, and that such damages be assessed in a separate accounting procedure and trebled in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

  g. Award Dunkin' Donuts prejudgment interest in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

  h. Award Dunkin' Donuts such exemplary or punitive damages as are deemed appropriate because of the willful, intentional, and malicious nature of the conduct of Defendants;

  i. Award Dunkin' Donuts its investigation costs, attorneys' fees, and other costs incurred in connection with this action pursuant to the Franchise Agreements and § 35 of the Lanham Act, 15 U.S.C. § 1117; and

  j. Award Dunkin' Donuts such other relief as this Court may deem just and proper.

Respectfully submitted,

/s/ Donna M. Brewer
Robert A. Murphy (BBO# 363700)
Donna M. Brewer (BBO# 545254)
CASNER & EDWARDS, LLP
303 Congress Street, 2nd Floor
Boston, Massachusetts 02210
Telephone:    (617) 426-5900
Facsimile:    (617) 426-8810
rmurphy@casneredwards.com
brewer@casneredwards.com

Robert L. Zisk
Eric L. Yaffe (BBO# 548185)
Katherine L. Wallman
GRAY, PLANT, MOOTY, MOOTY
  & BENNETT, P.A.
2600 Virginia Avenue, N.W., Suite 1111
Washington, DC 20037
Telephone:    (202) 295-2200
Facsimile:    (202) 295-2250

*Attorneys for Plaintiffs*

Dunkin' Donuts Franchising LLC, Dunkin' Donuts Franchised Restaurants LLC and DD IP Holder LLC

Dated: December 10, 2010

3648.138/498503.1